* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Upon completion of its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer. *Page 2 
3. The carrier liable on the risk is correctly named.
4. The employee's average weekly wage was determined from an Industrial Commission Form 22 wage chart provided by the defendants with supporting wage documentation.
5. Documents entered into evidence include the following:
 a. Stipulated Exhibit #1-Plaintiff's medical records, Industrial Commission forms, Plaintiff's Answers to Defendants' Discovery; Defendants' Answers to Plaintiff's Discovery; and
 b. Defendants' Exhibit #1-Correspondence to plaintiff dated February 6, 2006 from Glenda Ewell, records manager for defendant-employer.
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 65 years old. He completed formal education through the ninth grade in high school, and he can read and write. Prior to his employment with defendant-employer, plaintiff worked in the clothing industry.
2. When plaintiff was 55 years old, he qualified for the receipt of Social Security disability benefits based in part on developmental disability, with limitations in adaptive behavior, significant academic deficiencies and personality disorder.
3. Plaintiff does not have a driver's license and relied upon Martin County Transit for transportation between work and home at a monthly cost of $35.00. *Page 3 
4. During plaintiff's eleven-year employment with defendant-employer, plaintiff received work assignments that involved simple, routine, repetitive tasks. Defendant-employer did not train plaintiff for a skilled position. Plaintiff was regarded as a good worker who was reliable, forthright, honest and trustworthy.
5. On Friday, May 13, 2005, defendant-employer instructed plaintiff to clear pallets from the dock. While working, plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer when he stepped on a nail that punctured the sole of his left boot and entered his left foot. As plaintiff does not have feeling in his feet because he has had insulin-dependent diabetes for over 12 years prior to this accident, plaintiff was unaware of his injury. Co-worker, Reginald Peel, also assigned to remove the pallets, observed plaintiff limping after they completed the work assignment. Plaintiff worked the entire eight-hour shift.
6. When plaintiff arrived home, his wife, Diane Wright, noticed that he was limping. Diane Wright experienced difficulty pulling off plaintiff's boot and when the boot was finally removed, she observed blood on the bottom of plaintiff's sock and found a nail in his shoe. She cleaned the wound to the best of her ability and plaintiff did not seek medical attention at that time.
7. On Sunday, May 15, 2005, Diane Wright contacted defendant-employer and spoke with Glenda Ewell, Records Manager, to make arrangements for plaintiff to receive transportation to a hospital because of the work-related accident on May 13, 2005.
8. On Monday, May 16, 2005, plaintiff was unable to get out of bed as a result of the aforementioned puncture wound. Upon arrival at Martin General Hospital, Dr. Stephen Lester examined plaintiff's left foot and observed, what in his opinion was, a nail puncture wound *Page 4 
located between the second and third toes. Due to the formation of gas gangrene, Dr. Lester immediately performed a below-the-left-knee amputation. Plaintiff was hospitalized for 13 days and received a prosthetic device to assist with walking. However, plaintiff experienced difficulty using the prosthetic device; and therefore, plaintiff uses a wheelchair to ambulate.
9. As of his deposition on October 23, 2006, Dr. Lester had not released plaintiff to return to work in any capacity and plaintiff has not received workers' compensation benefits.
10. Based on the Form 22 Wage Chart that was submitted in this matter, plaintiff's average weekly wage was $89.38, yielding a compensation rate of $59.59.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On May 13, 2005, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with the defendant-employer that resulted in a puncture wound to his left foot, which ultimately resulted in a below-the-left-knee amputation. N.C. Gen. Stat. § 97-2(6).
2. As a result of his injury by accident on May 13, 2005, plaintiff has been unable to earn wages in any employment and is entitled to temporary total disability compensation from May 14, 2005 and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury by accident, for so long as such examinations, evaluations and *Page 5 
treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay to plaintiff temporary total disability compensation at the rate of $59.59 per week from May 14, 2005 and continuing until further Order of the Industrial Commission. All benefits that have accrued shall be paid in one lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury for as long as such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or tend to lessen the period of disability.
3. A reasonable attorney's fee of twenty five percent (25%) of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty five percent (25%) of the lump sum compensation due plaintiff under Paragraph 1 of this Award shall be deducted from the sums due plaintiff and paid directly to plaintiff's counsel in one lump sum; thereafter, defendants shall pay every fourth check directly to plaintiff's counsel.
4. Defendants shall pay the costs.
 This the ___ day of June 2008. *Page 6 
S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ BUCK LATTIMORE COMMISSIONER *Page 1